IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ENDIA BEARD, On behalf of herself and all others similarly situated,** | )<br>)<br>) |
| **Plaintiff,** | )    1:21-cv-00057<br>)<br>) |
| v. | )<br>) |
| **HARRIS & HARRIS, LTD.,** | )<br>) |
| **Defendant.** | ) |

## CLASS ACTION COMPLAINT

NOW COMES the Plaintiff, ENDIA BEARD, by and through her attorneys, SMITHMARCO, P.C., suing on behalf of herself and all other similarly situated, and for her Class Action Complaint against the Defendant, HARRIS & HARRIS, LTD., Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

2.    This is a consumer class action for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq.  Plaintiff brings this action on behalf of consumers throughout the country who have had their consumer report impermissibly procured by Defendant.

### II.    JURISDICTION & VENUE

3.    Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

4.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

5.  ENDIA BEARD, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Mooresville, County of Morgan, State of Indiana.

6.  At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

7.  HARRIS & HARRIS, LTD, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Indiana.  Defendant's principal place of business is located in the State of Minnesota.   Defendant is incorporated in the State of Indiana.

8.  At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

### IV.   ALLEGATIONS

9.  As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

10. Prior to October 4, 2019, Plaintiff had an account with Defendant and/or Indiana University Hospital.

11. On October 4, 2019, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Southern District of Indiana (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 19-07435-RLM-7.

12. At the time Plaintiff filed her Bankruptcy Petition, she owed a debt to Indiana University Hospital (hereinafter, "the Debt").

13. The Debt was assigned to and/or purchased by Defendant for collection from Plaintiff.

14. The Debt was for medical treatment.

15. Plaintiff scheduled the Debt in her Bankruptcy Petition.

16. At the time Plaintiff filed her bankruptcy petition, she owed no other debt to Defendant.

17. At the time Plaintiff filed her bankruptcy petition, she had no other accounts with Defendant.

18. On or about January 14, 2020, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing her liability for the Debt (hereinafter, "the Discharge Order").

19. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship ended between Plaintiff and Defendant as to the Debt

20. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

21. Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in her estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of her Bankruptcy Petition.

22. The Debt, and any other account(s) Plaintiff had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Plaintiff filed her Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

23. On or about January 16, 2020, the Bankruptcy Court served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

24. As of January 16, 2020, Defendant was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

25. Defendant was aware that any debt incurred by Plaintiff prior to October 4, 2019, which was assigned to Defendant for collection, was discharged in bankruptcy.

26. At no time since January 14, 2020 has Plaintiff owed any debt to Defendant.

27. At no time since January 14, 2020 has Plaintiff opened any accounts with Defendant.

28. At no time since January 14, 2020 has Plaintiff had any personal business relationship with Defendant.

29. Given the facts delineated above, at no time since January 14, 2020 has Defendant had any information in its possession to suggest that Plaintiff owed a debt to Defendant.

30. Given the facts delineated above, at no time since January 14, 2020 has Defendant had any information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

31. Experian Information Solutions, Inc., (hereinafter, "Experian") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Experian is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

32. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former

employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

33. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only.  See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

34. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128).  *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

35. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

36. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**.  To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

37. Defendant is a subscriber and user of consumer reports issued by Experian.

38. Defendant also furnishes data to Experian about its experiences with its customers and potential customers.

39. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

40. Defendant has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers while also purchasing from Experian information about its customers and other consumers.

41. On or about January 28, 2020, despite being cognizant of the facts as delineated above, Defendant procured from Experian a copy of Plaintiff's consumer report at which time, Defendant made a general or specific certification to Experian that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

42. The certification made by Defendant to Experian was false.

43. Despite certifying to Experian that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

44. At no time on or prior to January 28, 2020 did Plaintiff consent to Defendant obtaining her consumer report.

45. On or about January 28, 2020, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report.

46. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

47. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

48. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

49. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

50. Plaintiff has a right to have her Confidential Information kept private.

51. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides her consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

52. Defendant procured from Experian Plaintiff's consumer report without her knowledge or consent.

53. Defendant procured from Experian Plaintiff's consumer report without a permissible purpose.

54. By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

55. By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

56. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Experian, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of her privacy.

57. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Experian, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of her personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

58. When Plaintiff discovered that Defendant had procured her Confidential Information from Experian, Plaintiff was concerned about the continued security and privacy of her Confidential Information.

59. When Plaintiff received her Discharge Order from the Bankruptcy Court, she rightfully believed that her business relationship with Defendant had come to an end.  When Plaintiff discovered that Defendant had procured her Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believed that Defendant would continue to act with impunity and continue to procure her Confidential Information indefinitely.

60. The actions of Defendant caused Plaintiff to suffer from frustration, anxiety and emotional distress.

## V.   CLASS ACTION ALLEGATIONS

61.   Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class of individuals:

> *All persons about whom, during the two (2) year period prior to the filing of the Complaint in this matter, Defendant obtained a consumer report pertaining to a consumer after that consumer had obtained a bankruptcy discharge of any debt said consumer owed to Defendant and/or any debt that was being collected from Plaintiff by Defendant, and for any secured debts, after said consumer had been dispossessed of any property securing such a debt (hereinafter, the "Class").*

62.   Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

63.   **Numerosity**. **Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Defendant sells thousands of consumer reports on consumers each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

64.   **Common Questions of Law and Fact**.  **Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include, among others: (i) Whether Defendant violated section 1681b(f) of the FCRA by procuring Plaintiff's consumer report without a permissible purpose.

65.   **Typicality**. **Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories.

66.   **Adequacy**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests are aligned with, and are not antagonistic to, the interests of the

members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

67. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

### VI. CAUSES OF ACTION

**COUNT I – Fair Credit Reporting Act 15 U.S.C. § 1681b(f)**
**On behalf of Plaintiff and the Class**

68. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully procuring a copy of Plaintiff's and putative class members' consumer report in violation of 15 U.S.C. § 1681b(f)

## VII. JURY DEMAND

70. Plaintiff hereby demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ENDIA BEARD, by and through her attorneys, respectfully prays for an Order to be entered certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681b, pursuant to 15 U.S.C. § 1681n; that judgment be entered for Plaintiff and the Class against Defendant for actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

Respectfully submitted,
**ENDIA BEARD, on behalf of herself
and all others similarly situated**

By: ___s/ David M. Marco___
Attorney for Plaintiff

Dated: January 8, 2021

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:       dmarco@smithmarco.com