IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ENDIA BEARD and RANDALL LEE CLIFFORD,** ) <br> on behalf of themselves and all others similarly situated,) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **HARRIS & HARRIS, LTD.,** ) <br> ) <br> **Defendant.** ) | 1:21-cv-00057-JRS-MJD <br><br> Judge Sweeney II <br> Magistrate Judge Dinsmore |

## FIRST AMENDED CLASS ACTION COMPLAINT

NOW COME the plaintiffs, ENDIA BEARD and RANDALL LEE CLIFFORD, by and through their attorneys, SMITHMARCO, P.C., suing on behalf of themselves and all other similarly situated, and for their First Amended Class Action Complaint against the defendant, HARRIS & HARRIS, LTD., the plaintiffs state as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

2. This is a consumer class action for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq. Plaintiffs bring this action on behalf of consumers throughout the country who have had their consumer report impermissibly procured by the defendant.

### II.   JURISDICTION & VENUE

3. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

5. ENDIA BEARD, (hereinafter, "Ms. Beard") is an individual who was at all relevant times residing in the City of Mooresville, County of Morgan, State of Indiana.

6. At all relevant times, Ms. Beard was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

7. RANDALL LEE CLIFFORD, (hereinafter, "Mr. Clifford") is an individual who was at all relevant times residing in the City of Noblesville, County of Hamilton, State of Indiana.

8. At all relevant times, Mr. Clifford was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

9. HARRIS & HARRIS, LTD, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Indiana. Defendant's principal place of business is located in the State of Minnesota. Defendant is incorporated in the State of Indiana.

10. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

11. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

### IV.   ALLEGATIONS SPECIFIC TO ENDIA BEARD

12. Prior to October 4, 2019, Ms. Beard had an account with Defendant and/or Indiana University Hospital.

13. On October 4, 2019, Ms. Beard filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Southern District of Indiana (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 19-07435-RLM-7.

14. At the time Ms. Beard filed her Bankruptcy Petition, she owed a debt to Indiana University Hospital (hereinafter, "the Debt").

15. The Debt was assigned to and/or purchased by Defendant for collection from Ms. Beard.

16. The Debt was for medical treatment.

17. Ms. Beard scheduled the Debt in her Bankruptcy Petition.

18. At the time Ms. Beard filed her bankruptcy petition, she owed no other debt to Defendant.

19. At the time Ms. Beard filed her bankruptcy petition, she had no other accounts with Defendant.

20. On or about January 14, 2020, the Bankruptcy Court entered an order discharging Ms. Beard's debts, thereby extinguishing her liability for the Debt (hereinafter, "the Discharge Order").

21. When the Bankruptcy Court entered the Discharge Order, the relationship ended between Ms. Beard and Defendant as to the Debt.

22. Moreover, at the time of Ms. Beard's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Ms. Beard's potential creditors.

23. Given that Ms. Beard's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Ms. Beard had no assets in her estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Ms. Beard's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Ms. Beard's schedule of creditors, filed as part of her Bankruptcy Petition.

24. The Debt, and any other account(s) Ms. Beard had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Ms. Beard filed her Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

25. On or about January 16, 2020, the Bankruptcy Court served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

26. As of January 16, 2020, Defendant was effectively put on notice that any debt incurred prior to the filing of Ms. Beard's Bankruptcy Petition was discharged.

27. Defendant was aware that any debt incurred by Ms. Beard prior to October 4, 2019, which was assigned to Defendant for collection, was discharged in bankruptcy.

28. At no time since January 14, 2020 has Ms. Beard owed any debt to Defendant.

29. At no time since January 14, 2020 has Ms. Beard opened any accounts with Defendant.

30. At no time since January 14, 2020 has Ms. Beard had any personal business relationship with Defendant.

31. Given the facts delineated above, at no time since January 14, 2020 has Defendant had any information in its possession to suggest that Ms. Beard owed a debt to Defendant.

32. Given the facts delineated above, at no time since January 14, 2020 has Defendant had any information in its possession to suggest that Ms. Beard was responsible to pay a debt to Defendant.

33. Experian Information Solutions, Inc., (hereinafter, "Experian") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Experian is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

34. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

35. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

36. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

37. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

38. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

39. Defendant is a subscriber and user of consumer reports issued by Experian.

40. Defendant also furnishes data to Experian about its experiences with its customers and potential customers.

41. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

42. Defendant has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers while also purchasing from Experian information about its customers and other consumers.

43. On or about January 28, 2020, despite being cognizant of the facts as delineated above, Defendant procured from Experian a copy of Ms. Beard's consumer report at which time, Defendant made a general or specific certification to Experian that Defendant sought the consumer report in connection with a business transaction initiated by Ms. Beard, to review an account to determine whether Ms. Beard continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

44. The certification made by Defendant to Experian was false.

45. Despite certifying to Experian that it had a permissible purpose for procuring Ms. Beard's consumer report, Defendant had no such permissible purpose.

46. At no time on or prior to January 28, 2020 did Ms. Beard consent to Defendant obtaining her consumer report.

47. On or about January 28, 2020, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report.

48. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, Ms. Beard's Confidential Information was published to Defendant.

49. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, Defendant reviewed Ms. Beard's Confidential Information.

50. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Ms. Beard's Confidential Information.

51. On or about January 28, 2020, at the time Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, Defendant obtained information relative to Ms. Beard's credit history and credit worthiness.

52. Ms. Beard has a right to have her Confidential Information kept private.

53. No individual/entity is permitted to obtain and review Ms. Beard's personal and confidential information unless either Ms. Beard provides her consent for the release of the

information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

54. Defendant procured from Experian Ms. Beard's consumer report without her knowledge or consent.

55. Defendant procured from Experian Ms. Beard's consumer report without a permissible purpose.

56. Defendant's act of procuring Ms. Beard's consumer report from Experian without a permissible purpose, as delineated *supra*, constitutes a violation of §1681b(f)(1).

57. Moreover, Defendant procured Ms. Beard's consumer report on or about January 28, 2020 knowing that it did not have Ms. Beard's authority or an otherwise permissible purpose to do so; thus, Defendant's act of procuring Ms. Beard's consumer report was made knowingly, or at least in reckless disregard, for its obligations as a user of consumer credit information under the FCRA.  *See* 15 U.S.C. §1681n.

58. In the alternative, Defendant was negligent in failing to comply with the requirements of the FCRA when it procured Ms. Beard's consumer report from Experian without a permissible purpose on or about January 28, 2020.  *See* 15 U.S.C. §1681o.

59. By its actions, when Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, Defendant invaded Ms. Beard's privacy.

60. By its actions, when Defendant impermissibly procured from Experian Ms. Beard's individual and personal credit report, Defendant effectively intruded upon the seclusion of Ms. Beard's private affairs.

61. When Ms. Beard discovered that Defendant had procured her personal, private and confidential information from Experian, Ms. Beard was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of her privacy.

62. When Ms. Beard discovered that Defendant had procured her personal, private and confidential information from Experian, Ms. Beard was extremely worried, concerned and frustrated that Defendant's impermissible access of her personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

63. When Ms. Beard discovered that Defendant had procured her Confidential Information from Experian, Ms. Beard was concerned about the continued security and privacy of her Confidential Information.

64. When Ms. Beard received her Discharge Order from the Bankruptcy Court, she rightfully believed that her business relationship with Defendant had come to an end. When Ms. Beard discovered that Defendant had procured her Confidential Information after it had been sent notice of Ms. Beard's bankruptcy discharge, Ms. Beard believed that Defendant would continue to act with impunity and continue to procure her Confidential Information indefinitely.

65. The actions of Defendant caused Ms. Beard to suffer from frustration, anxiety and emotional distress.

V. **ALLEGATIONS SPECIFIC TO RANDALL LEE CLIFFORD**

66. Prior to March 6, 2019, Mr. Clifford had multiple debts being collected by Defendant.

67. On March 6, 2019, Mr. Clifford filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Southern District of

Indiana (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 19-01286-JMC-7.

68. At the time Mr. Clifford filed his Bankruptcy Petition, he owed multiple debts to Indiana University Hospital (hereinafter, "the Debts").

69. The Debts were assigned to and/or purchased by Defendant for collection from Mr. Clifford.

70. The Debts were for medical treatment.

71. Mr. Clifford scheduled the Debts in his Bankruptcy Petition.

72. At the time Mr. Clifford filed his bankruptcy petition, he had no other debts being collected from him by Defendant.

73. At the time Mr. Clifford filed his bankruptcy petition, he had no other accounts with Defendant.

74. On or about June 4, 2019, the Bankruptcy Court entered an order discharging Mr. Clifford's debts, thereby extinguishing his liability for the Debts (hereinafter, "the Discharge Order").

75. When the Bankruptcy Court entered the Discharge Order, the relationship ended between Mr. Clifford and Defendant as to the Debts.

76. Moreover, at the time of Mr. Clifford's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Mr. Clifford's potential creditors.

77. Given that Mr. Clifford's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Mr. Clifford had no assets in his estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Mr. Clifford's bankruptcy petition are

considered discharged, irrespective of whether the debts were specifically listed in Mr. Clifford's schedule of creditors, filed as part of his Bankruptcy Petition.

78. The Debt, and any other account(s) Mr. Clifford had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Mr. Clifford filed his Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

79. On or about June 5, 2019, the Bankruptcy Court served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

80. As of June 5, 2019, Defendant was effectively put on notice that any debt incurred prior to the filing of Mr. Clifford's Bankruptcy Petition was discharged.

81. Defendant was aware that any debt incurred by Mr. Clifford prior to March 6, 2019, which was assigned to Defendant for collection, was discharged in bankruptcy.

82. At no time since June 4, 2019 has Mr. Clifford owed any debt to Defendant.

83. At no time since June 4, 2019 has Mr. Clifford opened any accounts with Defendant.

84. At no time since June 4, 2019 has Mr. Clifford had any personal business relationship with Defendant.

85. Given the facts delineated above, at no time since June 4, 2019 has Defendant had any information in its possession to suggest that Mr. Clifford owed a debt to Defendant.

86. Given the facts delineated above, at no time since June 4, 2019 has Defendant had any information in its possession to suggest that Mr. Clifford was responsible to pay a debt to Defendant.

87. Experian Information Solutions, Inc., (hereinafter, "Experian") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). Experian is a data repository

that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

88.     Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

89.     Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only.  See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

90.     The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128).  *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

91.     When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

92.     Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

93.     Defendant is a subscriber and user of consumer reports issued by Experian.

94.     Defendant also furnishes data to Experian about its experiences with its customers and potential customers.

95.     Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

96.     Defendant has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers while also purchasing from Experian information about its customers and other consumers.

97.     On or about September 4, 2020, despite being cognizant of the facts as delineated above, Defendant procured from Experian a copy of Mr. Clifford's consumer report at which time, Defendant made a general or specific certification to Experian that Defendant sought the consumer report in connection with a business transaction initiated by Mr. Clifford, to review an account to determine whether Mr. Clifford continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

98.     The certification made by Defendant to Experian was false.

99. Despite certifying to Experian that it had a permissible purpose for procuring Mr. Clifford's consumer report, Defendant had no such permissible purpose.

100. At no time on or prior to September 4, 2020 did Mr. Clifford consent to Defendant obtaining his consumer report.

101. On or about September 4, 2020, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report.

102. On or about September 4, 2020, at the time Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, Mr. Clifford's Confidential Information was published to Defendant.

103. On or about September 4, 2020, at the time Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, Defendant reviewed Mr. Clifford's Confidential Information.

104. On or about September 4, 2020, at the time Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Mr. Clifford's Confidential Information.

105. On or about September 4, 2020, at the time Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, Defendant obtained information relative to Mr. Clifford's credit history and credit worthiness.

106. Mr. Clifford has a right to have his Confidential Information kept private.

107. No individual/entity is permitted to obtain and review Mr. Clifford's personal and confidential information unless either Mr. Clifford provides his consent for the release of the

information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

108. Defendant procured from Experian Mr. Clifford's consumer report without his knowledge or consent.

109. Defendant procured from Experian Mr. Clifford's consumer report without a permissible purpose.

110. Defendant's act of procuring Mr. Clifford's consumer report from Experian without a permissible purpose, as delineated *supra*, constitutes a violation of §1681b(f)(1).

111. Moreover, Defendant procured Mr. Clifford's consumer report on or about September 4, 2020 knowing that it did not have Mr. Clifford's authority or an otherwise permissible purpose to do so; thus, Defendant's act of procuring Mr. Clifford's consumer report was made knowingly, or at least in reckless disregard, for its obligations as a user of consumer credit information under the FCRA. *See* 15 U.S.C. §1681n.

112. In the alternative, Defendant was negligent in failing to comply with the requirements of the FCRA when it procured Mr. Clifford's consumer report from Experian without a permissible purpose on or about September 4, 2020. *See* 15 U.S.C. §1681o.

113. By its actions, when Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, Defendant invaded Mr. Clifford's privacy.

114. By its actions, when Defendant impermissibly procured from Experian Mr. Clifford's individual and personal credit report, Defendant effectively intruded upon the seclusion of Mr. Clifford's private affairs.

115. When Mr. Clifford discovered that Defendant had procured his personal, private and confidential information from Experian, Mr. Clifford was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of his privacy.

116. When Mr. Clifford discovered that Defendant had procured his personal, private and confidential information from Experian, Mr. Clifford was extremely worried, concerned and frustrated that Defendant's impermissible access of his personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

117. When Mr. Clifford discovered that Defendant had procured his Confidential Information from Experian, Mr. Clifford was concerned about the continued security and privacy of his Confidential Information.

118. When Mr. Clifford received his Discharge Order from the Bankruptcy Court, he rightfully believed that his business relationship with Defendant had come to an end. When Mr. Clifford discovered that Defendant had procured his Confidential Information after it had been sent notice of Mr. Clifford's bankruptcy discharge, Mr. Clifford believed that Defendant would continue to act with impunity and continue to procure his Confidential Information indefinitely.

119. The actions of Defendant caused Mr. Clifford to suffer from frustration, anxiety and emotional distress.

## VI.   CLASS ACTION ALLEGATIONS

120. Plaintiffs bring this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class of individuals:

> *All persons about whom, during the two (2) year period prior to the filing of the Complaint in this matter, Defendant obtained a consumer report pertaining to a consumer after that consumer had obtained a bankruptcy discharge of any debt said consumer owed to Defendant and/or any debt*

>       *that was being collected from Plaintiff by Defendant, and for any secured debts, after said consumer had been dispossessed of any property securing such a debt (hereinafter, the "Class").*

121. Plaintiffs reserve the right to amend the definition of the Class based on discovery or legal developments.

122. **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. Defendant sells thousands of consumer reports on consumers each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

123. **Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include, among others: (i) Whether Defendant violated section 1681b(f) of the FCRA by procuring Plaintiff's consumer report without a permissible purpose.

124. **Typicality.  Fed. R. Civ. P. 23(a)(3)**. ENDIA BEARD's claims and RANDALL LEE CLIFFORD's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories.

125. **Adequacy.  Fed. R. Civ. P. 23(a)(4).  The p**laintiffs are adequate representatives of the Class because their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.  The plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

126. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members,

and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VII.   CAUSES OF ACTION

### COUNT I – Fair Credit Reporting Act 15 U.S.C. § 1681b(f) on behalf of Plaintiffs and the Class

127.   The plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

128.   Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully procuring a copy of the plaintiffs' and the putative class members' consumer reports in violation of 15 U.S.C. § 1681b(f).

## VIII.   JURY DEMAND

129.   The plaintiffs hereby demand a trial by jury on all issues so triable.

## IX.   PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, ENDIA BEARD and RANDALL LEE CLIFFORD, by and through their attorneys, respectfully pray for an Order to be entered certifying the proposed class

under Rule 23 of the Federal Rules of Civil Procedure and appointing the plaintiffs and their counsel to represent the Class; that judgment be entered for the plaintiffs and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681b, pursuant to 15 U.S.C. § 1681n; that judgment be entered for the plaintiffs and the Class against Defendant for actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

        Respectfully submitted,
        **ENDIA BEARD and RANDALL LEE**
        **CLIFFORD, on behalf of themselves**
        **and all others similarly situated.**

        By:    s/ David M. Marco
                 Attorney for Plaintiff

Dated: May 12, 2021

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:      dmarco@smithmarco.com